[Cite as *Tell v. Cleveland*, 2020-Ohio-3115.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

WILLIAM TELL,                          :

    Plaintiff-Appellant,          :

    v.                            :

CITY OF CLEVELAND,                     :

    Defendant-Appellee.           :

No. 108137

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** May 28, 2020

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-15-838323

### *Appearances:*

Samuel R. Smith II, *for appellant.*

Zashin & Rich, Co., L.P.A., Jon M. Dileno, and Ami J. Patel, *for appellee.*

FRANK D. CELEBREZZE, JR., P.J.:

{¶ 1} Plaintiff-appellant, William Tell ("appellant"), brings the instant appeal challenging the trial court's judgment upholding the decision of the Civil Service Commission ("Commission") terminating his employment with the defendant-appellee, the city of Cleveland ("City"). Appellant argues that the City did not have

just cause to terminate his employment and that the trial court erred in upholding his termination. After a thorough review of the record and law, this court affirms.

## I. Factual and Procedural History

{¶ 2} Appellant was employed as the security manager[1] for the City's Department of Public Utilities since 2001. As security manager, appellant was responsible for the security of several public utility facilities, including four of the City's water treatment facilities that are the subject of the instant appeal. Appellant supervised approximately 55 security guards, some of whom were stationed at these water treatment facilities.

{¶ 3} On October 16, 2012, appellant was issued a three-day suspension as a result of a security failure at the Kirtland Pump Station ("Kirtland") located on Cleveland's near east side. The main gate at Kirtland was not working properly, and the gate had apparently been propped open since June 2012. Appellant was aware of the issue with the gate as of June 21, 2012. Appellant failed to ensure that security guards were staffed at the gate, and cameras positioned throughout the premises were not functioning.

{¶ 4} On September 11, 2012, a local television news station's investigative reporter was able to gain access into the Kirtland facility through this malfunctioning gate. The reporter walked around the premises, attempted to open

---

[1] The parties' briefs also refer to appellant's position as "Chief of Security" and "Chief of Police." Appellant's official position was Chief of the Public Utilities Police Division.

doors, and made "hand waving" gestures to the cameras. This reporter's efforts were filmed and later aired on local television.

{¶ 5} As a result of the incident involving the investigative reporter, appellant was later suspended for three days because he failed to take any action with regard to the gate, did not place a security guard at the gate, and did not advise his management of the condition of the gate. As part of appellant's job duties and responsibilities, appellant was to draft a bimonthly report to his supervisor detailing security issues. Appellant completed his bimonthly reports during this timeframe, but he failed to mention the malfunctioning gate at the Kirtland facility in his reports.

{¶ 6} On May 24, 2013, a dump truck was exiting the Garret Morgan Water Treatment Plant ("Morgan") through a gate on West 49th Street. The dump truck drove through the exit as the gate was closing. The dump truck damaged the gate, ripping the gate from its moorings. Appellant ordered the gate to be remedied with traffic cones and caution tape. Appellant again failed to notify his supervisors of this damaged gate.

{¶ 7} On June 3, 2013, the same investigative reporter filmed the damaged gate at the Morgan facility. This reporter also contacted appellant's supervisor and inquired as to the damaged gate. In his May 29, 2013 bimonthly report to his supervisor, appellant failed to mention the damaged gate at the Morgan facility.

{¶ 8} As a result of the incident at the Morgan facility, appellant was charged with violations of Civil Service Rule 9.10(1) "neglect of duty"; (3) "incompetence or

inefficiency in performance of duties"; and (18) "other failure of good behavior which is detrimental to the service or any other act of misfeasance, malfeasance or nonfeasance in office." After appellant was charged with the violations, he was terminated from his position as security manager on July 10, 2013. On July 11, 2013, appellant sent a notice of appeal of his termination to Cleveland's Civil Service Commission.

{¶ 9} A three-day hearing was held on July 9, 10, and 11, 2014, in front of a referee. The referee issued an opinion on September 11, 2014, recommending that the City's termination of appellant be upheld. The City adopted the referee's recommendation, and appellant filed an appeal to the Commission.

{¶ 10} On November 14, 2014, both appellant and the City presented arguments to the Commission. The Commission upheld the City's decision to terminate appellant on December 15, 2014.

{¶ 11} On January 2, 2015, appellant filed a notice of appeal of the Commission's decision to the Cuyahoga County Court of Common Pleas pursuant to R.C. Chapter 2506. The trial court set a briefing schedule for the parties to file their respective briefs. Appellant filed his brief on May 11, 2015. Therein, appellant argued that his termination should be modified to "suspension with appropriate back wages and attorney's fees because the City's decision is unconstitutional, arbitrary and capricious and not based upon reliable probative and substantial evidence."

{¶ 12} The City filed its answer brief on June 11, 2015. Therein, the City argued that the Commission's decision and appellant's termination should be affirmed.

{¶ 13} More than two years after he filed his brief, appellant filed a motion to introduce new evidence on September 18, 2017. Appellant sought to introduce photographic evidence that he argued demonstrated that the City was continuing to utilize the security measures that resulted in his termination. On September 25, 2017, the City filed its brief in opposition to appellant's motion to introduce new evidence. On November 21, 2018, the trial court issued a judgment entry denying appellant's motion to introduce new evidence.

{¶ 14} On December 27, 2018, appellant filed a supplemental motion to introduce new evidence. Appellant again sought to introduce photographic evidence that he argued demonstrated that the City was continuing to utilize the security measures that resulted in his termination. The trial court did not rule on this motion.

{¶ 15} On the same day, December 27, 2018, the trial court issued a judgment entry upholding the decision of the Commission. The trial court's judgment entry provided, in relevant part,

> Appellant, in his capacity as the [City's] Chief of Security for the Public Utilities Department, was responsible for security at a number of public utilities facilities, including the City's four water treatment plants. In September 2012, the City learned that appellant left the Kirtland Water Facility's entrance gate open and unmanned by a security guard. Appellant was suspended for three days and was re-informed of his security responsibilities to staff a guard at open gates and to notify his

superiors of security vulnerabilities. In June 2013, the City learned that the gate at the [Morgan facility] was missing and there was no guard present.

The City charged appellant with violations of Civil Service Rule 9.10(1) neglect of duty, (3) incompetence or inefficiency in performance of duties, and (18) for other failure of good behavior. Appellant received notice of these charges and was given the opportunity to respond. The City terminated appellant. Appellant then appealed his termination and was provided a three-day hearing. After reviewing the evidence, the decision to terminate appellant was upheld. Appellant then appealed to the Cleveland Civil Service Commission. The Commission held a hearing and upheld the ruling.

Accordingly, the court finds that the decision of the commission is not unconstitutional, illegal, arbitrary, capricious, unreasonable, nor unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record. There is no just cause for delay.

{¶ 16} On January 22, 2019, appellant filed the instant appeal challenging the trial court's judgment. Appellant assigns two errors for review:

I. The trial court improperly denied appellant's administrative agency appeal because its decision — finding that no police officer was stationed at the water plant which was the basis of the improper termination of [appellant] — was clearly erroneous and contrary to the evidence in the record that there was an officer stationed at the water plant and not unmanned as the court's order states.

II. The trial court improperly denied appellant's administrative agency appeal because the City's decision to terminate was arbitrary and capricious and not based on reliable probative or substantial evidence.

## II. Law and Analysis

{¶ 17} Appellant's first and second assignments of error and the arguments raised therein are interrelated. Accordingly, we will address his second assignment

of error first. Appellant challenges the trial court's judgment upholding the Commission's decision and his termination.

## A. Standard of Review

{¶ 18} Trial courts and appellate courts apply different standards of review to appeals brought pursuant to R.C. Chapter 2506. R.C. 2506.04 provides that if a party appeals an administrative decision, the trial court "may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record." R.C. 2506.04 further provides that the trial court's judgment "may be appealed by any party on questions of law."

{¶ 19} The Ohio Supreme Court has explained this distinction as follows:

[W]e have distinguished the standard of review to be applied by common pleas courts and courts of appeals in R.C. Chapter 2506 administrative appeals. The common pleas court considers the "whole record," including any new or additional evidence admitted under R.C. 2506.03, and determines whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence. *See Smith v. Granville Twp. Bd. of Trustees*, [81 Ohio St.3d 608, 612, 693 N.E.2d 219 (1998)], citing *Dudukovich v. Lorain Metro. Hous. Auth.*, 58 Ohio St.2d 202, 206-207, 389 N.E.2d 1113 (1979) * * *.

*Henley v. Youngstown Bd. of Zoning Appeals*, 90 Ohio St.3d 142, 147, 735 N.E.2d 433 (2000).

{¶ 20} "The standard of review to be applied by the court of appeals in an R.C. 2506.04 appeal is 'more limited in scope.'" (Emphasis deleted.) *Id.*, quoting *Kisil v. Sandusky*, 12 Ohio St.3d 30, 34, 465 N.E.2d 848 (1984). In this way,

R.C. 2506.04 limits the ability of the appellate courts to review the trial court's judgment "only on 'questions of law,' which does not include the same extensive power to weigh 'the preponderance of substantial, reliable and probative evidence,' as is granted to the trial court." *Id.*, quoting *Kisil* at fn. 4.

> "It is incumbent on the trial court to examine the evidence. Such is not the charge of the appellate court. * * * The fact that the court of appeals * * * might have arrived at a different conclusion than the administrative agency is immaterial. Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so."

*Henley* at 147, quoting *Lorain City School Dist. Bd. of Edn. v. State Emp. Relations Bd.*, 40 Ohio St.3d 257, 261, 533 N.E.2d 264 (1988).

{¶ 21} As such, our limited review "permits reversal only when the [trial court] errs in its application or interpretation of the law or its decision is unsupported by a preponderance of the evidence as a matter of law." *Cleveland Clinic Found. v. Cleveland Bd. of Zoning Appeals*, 141 Ohio St.3d 318, 2014-Ohio-4809, 23 N.E.3d 1161, ¶ 30.

## B. Due Process

{¶ 22} In his second assignment of error, appellant argues that the trial court erred in affirming the Commission's decision upholding his termination because the City violated his due process rights. Specifically, appellant argues that he was not afforded a meaningful opportunity to be heard during his post-termination review hearing.

**{¶ 23}** As an initial matter, we note that appellant, as a public employee, had a property right in continued employment. This right is protected by the Due Process Clause of the Fourteenth Amendment. *Cleveland Bd. of Edn. v. Loudermill*, 470 U.S. 532, 538-539, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). As such, appellant was afforded certain pretermination rights. In *Loudermill*, the United States Supreme Court set forth the following procedural requirements for the pretermination hearing of a public employee:

> The essential requirements of due process * * * are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement. * * * The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story.

*Id.* at 546. "Although due process requires a pretermination opportunity to be heard, an evidentiary hearing is not required before termination of employment as long as the employee receives a full administrative hearing and judicial review after termination." *Card v. Cleveland*, 2017-Ohio-7173, 95 N.E.3d 1066, ¶ 19 (8th Dist.), citing *Washington v. Cleveland Civ. Serv. Comm.*, 8th Dist. Cuyahoga No. 94596, 2010-Ohio-5608, ¶ 29.

**{¶ 24}** In the instant matter, appellant argues that he was denied his post-termination due process rights. Appellant specifically takes issue with the testimony of Paul Bender, Director of the Public Utilities, that the City presented during the referee's July 2014 hearings.

**{¶ 25}** As security manager, appellant reported directly to an assistant director. The assistant director reported directly to Bender. The ultimate decision to terminate appellant on July 10, 2013, was made by Bender.

**{¶ 26}** Appellant appealed Bender's decision to the referee. The referee in turn makes a recommendation to Bender to either terminate or not terminate an employee. After the referee makes his or her recommendation to Bender, Bender thereafter makes a determination. Bender's determination can then be appealed to the Commission, which appellant did in this case.

**{¶ 27}** During the July 2014 hearings before the referee, Bender testified on cross-examination that no subsequent evidence could be introduced that would change his mind about his decision to terminate appellant. Bender stated, "no, I wouldn't [put appellant] back to work based on a recommendation" from the referee. (Tr. 277.) Appellant's counsel then asked Bender, "[i]s there nothing that the [r]eferee's recommendation or report can say to you that would change your decision about the termination[?]" (Tr. 277.) Bender then responded,

> Well, I don't know that until I see what comes out of it. But if — failure to station an officer in this case and insisting that that's the appropriate course of action, is a different position that I hold and that Public Utilities holds. So it's happened twice and anybody in this position, not just needs to say, okay, I disagree with that, but I'll follow it, it needs to be a person who endorses that approach.
>
> * * *
>
> No, I wouldn't bring [appellant] back to work because he holds a different view of that issue. Now, a recommendation that comes up with some different ideas of why [appellant] was terminated, I'd have

to see what that is, but I can't imagine.  If it's a recommendation, that I would follow, but change my mind —

\* \* \*

I wouldn't change my mind, no, I wouldn't change my mind.

There are appeal decisions that have more authority than me and then I follow those.

(Tr. 278.)

**{¶ 28}** After reviewing the record, we fail to see how Bender's testimony in any way deprived appellant of his post-termination due process rights.  The record reflects that appellant was afforded post-termination due process to the fullest possible extent.

**{¶ 29}** Appellant appealed his initial termination to the referee, and was afforded a three-day hearing at which he was represented by counsel.  During the referee's proceedings, appellant was afforded ample opportunity to cross-examine the witnesses presented by the City, including Bender.

**{¶ 30}** Bender's statement implying that "nothing would change his mind" about his decision to terminate appellant is not relevant to determining whether or not appellant was afforded his essential post-termination due process rights — notice and an opportunity to respond.  Therefore, to the extent that appellant argues that his due process rights were violated because he was not afforded a meaningful opportunity to be heard during his post-termination review hearing, we do not agree with appellant's categorization and find appellant's argument to be misplaced.

**{¶ 31}** Appellant's second assignment of error is overruled.

## C. Reliable, Probative, and Substantial Evidence

{¶ 32} In his first assignment of error, appellant argues that Bender's decision to terminate him was based on incorrect facts, and that Bender essentially ignored certain facts. Additionally, appellant argues in his second assignment of error that there was no just cause for his termination, and as a result, the trial court's decision to uphold his termination was not based on reliable, probative, or substantial evidence.

{¶ 33} First, to the extent that appellant argues that Bender based his decision to terminate him on incorrect facts, we simply do not agree. Appellant argues that there was a security guard at the Morgan facility. However, this security guard was not stationed at the damaged gate located on the West 49th Street exit. The security guard referenced by appellant was stationed at a different entrance gate at the Morgan facility.

{¶ 34} Appellant was terminated because he failed to station a security guard at the damaged gate and failed to notify his supervisors of the damaged gate. At the referee hearing, Bender asserted that he terminated appellant because of the "significance of the issue." (Tr. 270.) Further, Bender stated that appellant failed to place a security guard at the Morgan facility gate after it was damaged. Bender explained that appellant's solution for the damaged gate was to have a security guard keep the damaged gate under surveillance. Bender testified that the security guard who was tasked with surveilling the damaged gate was stationed at another entrance

gate, far from and out of sight of the damaged gate. Bender found appellant's solution to be inadequate. Bender stated,

> Our water plants — I guess there are two issues with securing water plants. One is just the public confidence in the drinking water supply. We have to — our customers need to know that the facilities are secure because they rely on the water from those operations.
>
> Secondly, the very real possibility that people can actually get in. Since September 11, there's been a huge number of changes. Everybody knows nationally what has been done. We've done the same kinds of things. Access to water treatment facilities, I've been involved with the Washington [D.C.] Water and Sewer Authority, tremendous amount of upgrades and security, physical security. Certainly technology has been added, but the primary method we used in [D.C.] and was certainly the expectation here too was that we need fencing. We need ways to keep people out and people, security officers, that are securing these facilities. So, that was the expectation. And then this was the second time.
>
> What went through my mind was how many — well, the other element here was [appellant] was insistent, and I believe to this day is insistent, that he disagrees that physical security is necessary in this case.

(Tr. 270-271.) The Morgan incident was appellant's second infraction. Appellant failed to notify his supervisors of both the Kirtland and Morgan incidents. Appellant's supervisors only became aware of each incident from the stories aired by the investigative reporter.

{¶ 35} In challenging the evidence based upon which he was terminated, appellant argues that there was no written policy mandating that appellant had to report the broken gates to a supervisor. Without a written policy mandating him to report the gate issues, appellant contends, there was no just cause for his termination.

{¶ 36} In support of his argument that there was no just cause for his termination, appellant directs this court's attention to *Cummings v. Cleveland*, 8th Dist. Cuyahoga No. 99200, 2013-Ohio-2541. In *Cummings*, this court reversed a trial court's decision upholding a city of Cleveland employee's termination. This court noted that Cleveland's reason for termination — the employee's failure to turn in a permission form to work a secondary job — was insignificant because the employee had worked for Cleveland for 13 years, had received permission to work the secondary job in the past, and would have been granted permission again to work the job if he had turned in the form. *Id.* at ¶ 15. This court further noted that "[t]here was also no evidence that there was a formal written policy stating that if an employee failed to receive permission to work a secondary job, he or she would be discharged." *Id.* at ¶ 14. Cleveland only presented evidence that it sent out memoranda reminding employees "to submit their permission forms, but nowhere does the reminder state that the employees would be subject to discharge for failing to do so." *Id.* As such, this court found that the trial court abused its discretion by affirming the employee's termination because the trial court's decision was not supported by a preponderance of reliable, probative, and substantial evidence. *Id.* at ¶ 15.

{¶ 37} We fail to see how the fact that there was no written policy requiring appellant to report a damaged gate supports appellant's contention that the trial court's decision was not based on reliable, probative, and substantial evidence. After reviewing the record, it is evident that appellant, as Chief of the Public Utilities

Police Division, was required to send reports to his supervisor detailing major incidents and highlighting achievements. Appellant failed to notify his supervisor of the Kirtland facility and Morgan facility damaged gates. Further, appellant's supervisors were made aware of the Kirtland and Morgan incidents only after the investigative news stories were broadcasted.

{¶ 38} In the instant matter, and unlike *Cummings*, appellant failed to staff a guard at the damaged gates and also failed to notify his supervisors of the severity of the damaged gate. Even if there was a written policy that required appellant to report a damaged gate to his supervisors, the fact remains that appellant did not staff the damaged gate with a security guard. Also unlike *Cummings*, appellant previously received a three-day suspension for failing to staff a security guard at a damaged gate at Kirtland. After the Kirtland facility incident, appellant was made aware that his failure to staff a security guard at the damaged gate was an inadequate security measure and would result in discipline. It appears from our reading of the record, that this fact alone — that a security guard was not placed at the damaged gate — would have been a sufficient reason to terminate appellant.

{¶ 39} Finally, to the extent that appellant argues that termination was not an appropriate measure of discipline because a similarly situated employee was not terminated and only received a one-day suspension, appellant fails to develop this argument by pointing to evidence in the record or citation to any authority. *See* App.R. 16(A)(7). Furthermore, as noted above, appellant's "similarly situated"

assertion is misplaced based on the limited scope of the standard of review this court applies in an R.C. 2506.04 appeal.

{¶ 40} For all of the foregoing reasons, appellant's first assignment of error is overruled.

### III. Conclusion

{¶ 41} After thoroughly reviewing the record, we affirm the trial court's judgment upholding the Commission's decision and appellant's termination. The trial court's judgment is supported by a preponderance of substantial, reliable, and probative evidence in the record. Accordingly, we are unable to conclude that the trial court's decision is unreasonable, arbitrary, or unconscionable.

{¶ 42} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
FRANK D. CELEBREZZE, JR., PRESIDING JUDGE

KATHLEEN ANN KEOUGH, J., and
EILEEN A. GALLAGHER, J., CONCUR